# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:17-CR-00073-RJC-DCK

| | |
|---|---|
| USA, | )<br>)<br>) |
|     **Plaintiff,** | )<br>) |
| v. | )    **ORDER**<br>) |
| JORGE HUMBERTO AGUILERA<br>ALEJANDRO CHAVEZ-LOPEZ<br>ROBERT ANTHONY FONCECA, | )<br>)<br>)<br>)<br>) |
|     **Defendants.** | )<br>) |

## I.    INTRODUCTION

**THIS MATTER** comes before the Court regarding the Defendant's Motion to Suppress, (Doc. No. 74); Plaintiff's Opposition to Defendant's Motion to Suppress, (Doc. No. 75); and Defendant's Reply to the Government's Response in Opposition to the Motion to Suppress, (Doc. No. 82). During the course of the trial, the Court granted the Defendant's Motion to Suppress for the reasons explained below.

After Alejandro Chavez-Lopez's ("Defendant") arrest for his involvement in a conspiracy to possess with the intent to distribute cocaine, police officers interviewed him at the police station for twenty-five minutes prior to reading him his Miranda rights. Miranda v. Arizona, 384 U.S. 436 (1966). The government self-suppressed the pre-Miranda statements, and Defendant sought suppression of the post-Miranda statements.

This Court found that Miranda warnings were deliberately delayed, thereby creating a presumption of compulsion regarding the Defendant's post-Miranda statements under U.S. v.

Mashburn, 406 F.3d 303, 309 (4th Cir. 2005).  Because the Government failed to rebut that presumption, the post-Miranda statements are inadmissible.

## II. FACTS

Two officers, including Homeland Security Investigations Special Agent Ubaldo Rios ("Agent Rios"), arrested Defendant on January 25, 2017, and transported him to the Huntersville Police Department Headquarters. The officers met with Defendant in an interview room. Initially, they spoke to the Defendant about the nature of his charge and about biographical information [Government's English Translation of the Interview Transcript ("Tr."), 1–3].  Before giving defendant any Miranda warnings, the agents asked Defendant approximately fifteen substantive questions, including "How did you get to Wal-Mart?" (Id. at 4); "You ever been arrested in North Carolina?" (Id. at 9); "You are in debt?" (Id. at 12); "The guy from the Hyundai, where did he come from? Where does he live?" (Id. at 12). During this discourse, at least three times the agents said a Miranda warning was necessary. (Id. at 6, 9, 16). Yet, it was twenty-five minutes into the conversation before Agent Rios provided such a warning. (Id. at 17). Defendant responded with "Ay," "Yes," and nodded his head. (Id. at 17–18). He did not sign a formal waiver of his Miranda rights but continued to speak with the agents. Post-Miranda, the agents questioned Defendant about his debt, (Id. at 29–30), inquired about the specific location of a "store" involved in drug trafficking, (Id. at 29), and discussed the ramifications of Defendant's cooperation, (Id. at 18–20).

## III. DISCUSSION

The Supreme Court noted in Missouri v. Siebert that "Miranda addressed 'interrogation practices … likely … to disable [an individual] from making a free and rational choice' about speaking." 542 U.S. 600, 601 (2004) (quoting Miranda, 384 U.S. at 464–65). When the reading

of Miranda is delayed, the admissibility analysis hinges on whether the delay is deliberate. Mashburn, 406 F.3d at 309. When the delay is deliberate, courts in the Fourth Circuit follow the Siebert presumptive framework:

> The admissibility of post-warning statements is governed by Elstad unless the deliberate "question-first" strategy is employed. If that strategy is deliberately employed, post-warning statements related to the substance of pre-warning statements must be excluded unless curative measures are taken before the post-warning statements are made.

Mashburn, 406 F.3d at 309 (quoting Missouri v. Seibert, 542 U.S. 600, 621 (2004)). In his concurring opinion in Seibert, Justice Kennedy determined that a post-Miranda statement is admissible if curative measures are taken even when deliberate delay is present. Id. Without curative measures, the post-warning statements are inadmissible. Id. On the other hand, when the delay is merely coincidental or accidental, courts apply the Elstad framework: "a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will," does not render a post-Miranda statement inadmissible. Oregon v. Elstad, 470 U.S. 298, 309 (1985).

The "question-first" tactic occurs when law enforcement uses pre-warning answers to inform, guide, and hone post-warning questioning. Siebert 542 U.S. at 600. The Supreme Court has found that the question-first technique, designed "to render Miranda warnings ineffective by waiting for a particularly opportune time to give them, after the suspect had already confessed," (Id. at 611), "effectively threatens to thwart Miranda's purpose of reducing the risk that a coerced confession would be admitted." Id. at 617.

To determine the nature of the delay, the Court explained, "[T]he focus is on facts apart from intent that show the question-first tactic at work." Siebert 542 U.S. at 616, n.6. Setting aside an analysis of the officer's subjective intent and focusing on the objective facts, the Siebert

plurality set forth five factors to determine whether the question-first tactic was deliberate, and whether midstream Miranda warnings were sufficient:

(1) the completeness and detail of the questions and answers to the first round of questioning;

(2) the two statements' overlapping content;

(3) the timing and setting of the first and second rounds;

(4) the continuity of police personnel; and

(5) the degree to which the interrogator's questions treated the second round as continuous with the first.

Siebert, 542 U.S. at 614. If these factors point to deliberate delay in the giving of a Miranda warning, a rebuttable presumption of compulsion arises as to any subsequent, post-warning statement. See Elstad, 470 U.S. at 314. If the government fails to rebut the presumption, then the post-warning statement is rendered inadmissible. Id.

In this case, the Siebert factors weigh in favor of suppressing the post-Miranda statements. Considering the first and second factors, although the completeness and detail of the interrogation and the content of the two statements differed to a degree pre- and post-Miranda, they still overlap. Additionally, the third factor weighs in favor of inadmissibility since both pre- and post-Miranda conversations transpired in the same interview room without interruption. As to the fourth factor, the same two agents handled both pre- and post-Miranda interviews, so the interrogating personnel remained continuous. And finally, regarding the fifth factor, the pre-Miranda conversation appeared to lay a foundation for the post-Miranda interrogation. The post-Miranda interview was a development of the pre-Miranda conversation in terms of culpability, cooperation, fears, and possible sentence. These five factors point to deliberate delay, creating a presumption of compulsion in the post-Miranda interview.

This presumption was not rebutted by curative measures, as the government conceded at the hearing. This lack of curative measures is fatal:

> The post-warning statements must be excluded unless curative measures are taken before they were made. Such measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the Miranda warning and waiver. For example, a substantial break in time and circumstances between the pre-warning statement and the warning may suffice in most instances, as may an additional warning explaining the likely inadmissibility of the pre-warning statement.

Siebert 542 U.S. at 601–04 (Kennedy, J. concurring). The Fourth Circuit applied this approach in Mashburn, as does this court here. Mashburn, 406 F.3d at 309. The agents did not take sufficient curative measures to render the post-warning statements admissible. Agent Rios read the Defendant his rights and presented him with a written Spanish language waiver of his Miranda rights. The Defendant did not sign that waiver. He acknowledged his rights verbally and by nodding. (Tr. at 17–18). Then, Agent Rios asked the Defendant if he understood his rights, and the Defendant replied, "No." (Id. at 18). The interview continued after the warning without a substantial break and was conducted by the same interviewing officers. The Defendant was not informed that his pre-warning statements were likely inadmissible. See Siebert, 542 U.S. at 621. In light of the totality of the circumstances, the mere administration of the Miranda warning, without more, does not overcome the presumption of compulsion regarding the post-Miranda statements.

## IV.   CONCLUSION

The agents improperly utilized the question-first tactic and deliberately delayed the reading of Defendant's Miranda rights. The Government failed to rebut the resulting presumption of compulsion, and consequently, the post-Miranda statements are inadmissible.

**IT IS THEREFORE ORDERED** that the Motion to Suppress, (Doc. No. 74), is **GRANTED**.

Signed: August 8, 2017

Robert J. Conrad, Jr.
United States District Judge